******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# PHYLLIS LARMEL *v.* METRO NORTH COMMUTER RAILROAD COMPANY
## (SC 20535)

Robinson, C. J., and D'Auria, Mullins,
Kahn, Ecker and Keller, Js.

*Syllabus*

Pursuant to the accidental failure of suit statute (§ 52-592 (a)), "[i]f any action, commenced within the time limited by law, has failed one or more times to be tried on its merits because . . . the action has been otherwise avoided or defeated . . . for any matter of form . . . the plaintiff . . . may commence a new action . . . for the same cause at any time within one year after the determination of the original action . . . ."

Pursuant further to statute ((Rev. to 2017) § 52-549z), unless a demand for a trial de novo is filed with the court within twenty days after an arbitrator's decision in a civil arbitration has been mailed to counsel, that decision shall become a judgment of the court.

The plaintiff sought to recover damages for personal injuries that resulted after she slipped and fell while boarding a passenger railcar operated by the defendant. The plaintiff had previously commenced a similar action against the defendant, claiming that her injuries were caused by a wet floor inside of the railcar and that the defendant negligently failed to prevent her fall. Before the commencement of trial in the prior action, the court ordered the parties to submit to civil arbitration pursuant to statute (§ 52-549u). The arbitrator found in favor of the defendant, and notice of the decision was issued. As a result of issues with the mail and staffing issues at the law firm of the plaintiff's counsel, the plaintiff's counsel did not become aware of the arbitration decision until twenty-two days after the decision was mailed. Because neither party demanded a trial de novo within twenty days of the mailing of the arbitrator's decision pursuant to § 52-549z, the trial court rendered judgment for the defendant. The plaintiff then commenced the present action pursuant to § 52-592 (a), claiming that her failure to demand a trial de novo in the prior action was due to excusable neglect. The trial court granted the defendant's motion to dismiss on the basis of res judicata, and the plaintiff appealed to the Appellate Court, which concluded that the action was not viable under § 52-592 (a) because the first action was tried on its merits by the arbitrator and had resulted in a judgment in favor of the defendant. Accordingly, the Appellate Court reversed the trial court's judgment dismissing the action and remanded the case with direction to render judgment for the defendant. On the granting of certification, the plaintiff appealed to this court. *Held* that the plaintiff's action could not be saved by § 52-592 (a) because her prior action was tried on the merits, and, accordingly, the judgment of the Appellate Court was affirmed: an arbitration pursuant to § 52-549u is a quasi-judicial examination of the parties' claims, the parties submitted evidence to the arbitrator, who was empowered to receive evidence and to find facts, and the arbitrator examined that evidence and rendered a decision on the merits; moreover, allowing a new action to be commenced under § 52-592 (a) in a case such as the present one would undermine the finality mandated by § 52-549z, and a more expansive reading of the phrase "tried on its merits" in § 52-592 (a) that incorporates forms of summary adjudication, other than a formal trial, that turn on the merits of the particular claims presented produced a result more harmonious with existing case law; furthermore, the plaintiff's reliance on the remedial nature of § 52-592 was unavailing, as the nature of the arbitration proceeding itself and the statutory requirement in § 52-549z that an arbitrator's decision shall become a judgment of the court if no demand for a trial de novo is filed within twenty days of the mailing of that decision to counsel indicated that the present case was considered on its merits, and requiring adherence to the judgment that followed worked neither a surprise nor an injustice on the plaintiff.

(*Two justices dissenting in one opinion*)

Argued May 6—officially released November 15, 2021*

*Procedural History*

Action to recover damages for personal injuries sustained as a result of the defendant's alleged negligence, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the court, *S. Richards, J.*, granted the defendant's motion to dismiss and rendered judgment thereon, from which the plaintiff appealed to the Appellate Court, *Lavine* and *Prescott, Js.*, with *Eveleigh, J.*, dissenting, which reversed the trial court's judgment and remanded the case with direction to render judgment for the defendant, and the plaintiff, on the granting of certification, appealed. *Affirmed.*

*James P. Brennan*, for the appellant (plaintiff).

*Beck S. Fineman*, with whom, on the brief, was *Jenna T. Cutler*, for the appellee (defendant).

*Opinion*

KAHN, J. This certified appeal requires us to consider whether a case that results in a judgment of the trial court in favor of the defendant following a plaintiff's failure to demand a trial de novo after an arbitration proceeding pursuant to General Statutes (Rev. to 2017) § 52-549z[1] has been "tried on its merits," thus barring a subsequent action under the accidental failure of suit statute, General Statutes § 52-592 (a). The Appellate Court's decision in the present case answered this question in the affirmative, and, as a result, that court remanded the case to the trial court with direction to render judgment in favor of the defendant, Metro North Commuter Railroad Company, on a claim of negligence brought by the plaintiff, Phyllis Larmel, that had previously been the subject of mandatory arbitration in a prior civil action. *Larmel* v. *Metro North Commuter Railroad Co.*, 200 Conn. App. 660, 661–62, 240 A.3d 1056 (2020). In the present appeal, the plaintiff claims that her first action was never "tried on its merits" because there was no formal trial in the first action and that, as a result, the Appellate Court's conclusion was in error. We disagree and, accordingly, affirm the judgment of the Appellate Court.

The following undisputed facts and procedural history are relevant to the present appeal. On October 1, 2014, the plaintiff was injured when she slipped and fell while boarding a passenger railcar at Union Station in New Haven. In 2015, the plaintiff commenced a personal injury action alleging that her injuries were caused by a wet floor inside of the railcar and that the defendant negligently failed to prevent her fall. After the close of pleadings in that case, but before the commencement of trial, the court ordered the parties to arbitration pursuant to General Statutes § 52-549u.[2]

The arbitration took place on December 1, 2017, and the arbitrator, Attorney David J. Crotta, Jr., issued his decision on February 26, 2018. In that decision, the arbitrator made various factual findings "[o]n the basis of the credible evidence" submitted by the parties, including the plaintiff's deposition transcript, medical records, medical bills, and a report filed by a medical expert for the defendant. The arbitrator noted that the plaintiff's credibility was circumspect because of various factual inconsistencies in her accounts of the event, and that a defective condition may have never even existed in the first instance because the plaintiff's fall could have been caused by "water on the bottom of [her] own shoes . . . ." Ultimately, the arbitrator found in favor of the defendant, concluding that "the plaintiff has failed to meet her burden of proof by a preponderance of the evidence . . . ."

Notice of the arbitrator's decision was mailed to the parties' counsel on February 27, 2018, as evidenced by

a postmark, but did not arrive at the office of the plaintiff's counsel until March 13, 2018. The plaintiff's counsel was on vacation at that time, and did not return to his office until March 19, 2018. As a result of certain staffing issues at the firm, another two days passed before the plaintiff's counsel became aware of the arbitrator's decision. By that point, twenty-two days had passed since the arbitrator's decision was mailed.[3]

Because neither party demanded a trial de novo pursuant to § 52-549z within twenty days of the February 27, 2018 mailing of the arbitrator's decision, the trial court rendered judgment in favor of the defendant in accordance with the arbitrator's decision on March 21, 2018. The plaintiff then filed a motion to open the judgment on March 23, 2018, which was denied by the court on August 27, 2018, following oral argument. The plaintiff neither appealed from the trial court's denial of her motion to open nor sought an articulation of the court's decision.

The plaintiff then commenced the present action in October, 2018, pursuant to the accidental failure of suit statute, § 52-592 (a).[4] The complaint in this action repeated the allegations of negligence in the first action and further alleged that her failure to demand a trial de novo in the first action was due to excusable neglect. The trial court in the present case granted the defendant's motion to dismiss on the basis of res judicata, and the plaintiff subsequently appealed to the Appellate Court.

The Appellate Court disagreed with the trial court's conclusion that the doctrine of res judicata required dismissal[5] but nonetheless concluded that the action was not viable under § 52-592 (a) because the first action had been "tried on its merits" by the arbitrator and had resulted in a judgment of the court in favor of the defendant. *Larmel* v. *Metro North Commuter Railroad Co.*, supra, 200 Conn. App. 666–67, 673. In its decision, the Appellate Court concluded that "[t]he judgment in the first action was rendered on the arbitrator's decision as a matter of law and, therefore, the plaintiff may not take advantage of § 52-592 because she has not met the factual predicate that the first action was not tried on its merits." Id., 671. On the basis of this reasoning, the Appellate Court reversed the trial court's judgment dismissing the action and remanded the case with direction to render judgment in favor of the defendant. Id., 661, 679.

Writing in dissent, Justice Eveleigh disagreed with the majority's conclusion that the plaintiff's first action was tried on its merits for purposes of § 52-592 (a). Id., 679. According to Justice Eveleigh, the majority incorrectly concluded that the phrase "tried on its merits" could be satisfied by an adjudication of a claim by an arbitrator, rather than by a more formal judicial proceeding. Id., 683–84 (*Eveleigh, J.*, dissenting). Citing

*Nunno* v. *Wixner*, 257 Conn. 671, 680–81, 778 A.2d 145 (2001), Justice Eveleigh argued that arbitration proceedings have "procedural deficiencies" that make them inadequate to be considered "trials," such as a lack of live testimony, cross-examination, and objection to evidence. Id., 682 (*Eveleigh, J.*, dissenting). As a result of those deficiencies, Justice Eveleigh concluded that cases sent to arbitration under § 52-549u are not "tried on [their] merits" for purposes of § 52-592 (a) and, therefore, that the present action should be remanded to the trial court for a determination of whether the plaintiff's failure to demand a trial de novo within twenty days of the arbitration decision caused the first action to fail as a "matter of form." Id., 679–84, 87 (*Eveleigh, J.*, dissenting). This certified appeal followed.[6]

In the present appeal, the plaintiff renews her contention that her second action may be saved by § 52-592 (a) because her first action was not "tried on its merits . . . ." The plaintiff argues that the Appellate Court's conclusion to the contrary was incorrect and that the case must be remanded to the trial court to decide whether her failure to demand a trial de novo in the first action was the result of mistake, inadvertence, or excusable neglect, and was, thus, a matter of form, allowing the plaintiff to utilize the accidental failure of suit statute to bring the same claim in a second lawsuit. Specifically, the plaintiff argues that the phrase "tried on its merits" means a formal trial and cannot be fulfilled by a judgment of the court following mandatory arbitration under § 52-549u. In response, the defendant argues that the Appellate Court properly interpreted the phrase "tried on its merits" to include a proceeding resolved in such a manner.

Because our resolution of this action involves a question of statutory construction, our review is plenary. See, e.g., *Desrosiers* v. *Diageo North America, Inc.*, 314 Conn. 773, 782, 105 A.3d 103 (2014). "When presented with a question of statutory construction, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Citation omitted; internal quotation marks omitted.) Id.; see also General Statutes § 1-2z.

We begin our analysis with the language of the accidental failure of suit statute. Section 52-592 (a) provides in relevant part: "If any action, commenced within the time limited by law, has failed one or more times to be *tried on its merits* because . . . the action has been

otherwise avoided or defeated . . . for any matter of form . . . the plaintiff . . . may commence a new action . . . for the same cause at any time within one year after the determination of the original action . . . ." (Emphasis added.) A plaintiff may obtain relief under this provision only if the original action has "failed one or more times to be tried on its merits . . . ." General Statutes § 52-592 (a). For the reasons that follow, we conclude that a judgment of the trial court rendered following arbitration pursuant to § 52-549u has been "tried on its merits" within the meaning of the accidental failure of suit statute.

To understand the phrase "tried on its merits" as used in § 52-592 (a), we must first review the definition of the term "tried." See, e.g., *State* v. *Webster*, 308 Conn. 43, 53, 60 A.3d 259 (2013). Because the term "tried" is not defined within the statutory scheme, we may "look to the common understanding of the term as expressed in a dictionary." (Internal quotation marks omitted.) Id. Modern dictionaries indicate that the word "[t]ried" is the past tense of the verb "try," which means, inter alia, "to examine or investigate judicially . . . ." Merriam-Webster's Collegiate Dictionary (11th Ed. 2014) p. 1344. Dictionaries dating back to the first use of the phrase "tried on its merits" in the 1918 revision of the General Statutes have consistently defined the word "try" in a broad manner. See Black's Law Dictionary (2d Ed. 1910) p. 1178 (defining "try" as verb meaning "[t]o examine judicially"); Webster's Revised Unabridged Dictionary of the English Language (1913) p. 2210 (defining "try" as "[t]o examine or investigate judicially; to examine by witnesses or other judicial evidence and the principles of law"); see also *Nixon* v. *United States*, 506 U.S. 224, 229–30, 113 S. Ct. 732, 122 L. Ed. 2d 1 (1993) (noting that word "try" has been defined broadly).

An arbitration proceeding pursuant to § 52-549u is, undoubtedly, a quasi-judicial examination of the parties' claims, as arbitrators are statutorily authorized to carry out functions that are judicial in nature. Indeed, the trial court may refer any civil action in which the reasonable expectation of the judgment is expected to be less than $50,000, to an arbitrator. General Statutes § 52-549u. "Such arbitrators shall have the power to: (1) Issue subpoenas for the attendance of witnesses and for the production of books, papers and other evidence, such subpoenas to be served in the manner provided by law for service of subpoenas in a civil action and to be returnable to the arbitrators; (2) administer oaths or affirmations; and (3) determine the admissibility of evidence and the form in which it is to be offered." General Statutes § 52-549w (c). The parties in this case submitted various pieces of evidence to the arbitrator for consideration. Although the parties chose not to offer witnesses or to object to evidence, the plaintiff does not dispute that she had the opportunity to do both.

Upon completion of the arbitration hearing, the arbitrator must submit a decision in writing within 120 days. General Statutes § 52-549x; cf. General Statutes § 51-183b. Thereafter, § 52-549z provides either party with an unqualified right to demand a trial de novo before the trial court. "If neither party requests a trial de novo within twenty days, the decision of the arbitrator *becomes the judgment of the court*." (Emphasis added.) *Nunno* v. *Wixner*, supra, 257 Conn. 679. Because neither party made such a demand in the present case, the arbitrator's decision, in fact, became a judgment of the trial court on the merits in favor of the defendant.

Even in the absence of a demand for a trial de novo, the trial court possesses independent authority to review and, if necessary, set aside the arbitrator's decision. See General Statutes § 52-549aa ("[i]n addition to the absolute right to a trial de novo . . . the court . . . may set aside an award of arbitrators and order a trial de novo in the Superior Court upon proof that the arbitrators acted arbitrarily or capriciously"). This degree of judicial oversight suggests that the trial court's involvement is more than "ministerial," as the plaintiff suggests.

In sum, the foregoing demonstrates that the plaintiff's claim against the defendant was presented to a neutral fact finder who was empowered by statute both to receive evidence and to find facts. That arbitrator examined what had been submitted to him and ultimately rendered a decision against the plaintiff on the merits. Notwithstanding its authority under § 52-549aa, the trial court subsequently adopted that decision as its own after the parties failed to object to it. Because this statutory process turned on the merits of the claims raised in the present case, § 52-592 (a) does not permit the plaintiff to circumvent the judgment of the trial court that was rendered as a result of it.[7]

Reaching a contrary conclusion would undermine the purpose of the twenty day deadline set forth in § 52-549z (d). If we were to accept the plaintiff's argument, a defendant that has obtained a judgment of the court in its favor following arbitration on the merits under § 52-549u would have no way of knowing whether the plaintiff's failure to demand a trial de novo within that period of time was the result of excusable neglect and, thus, no way of knowing whether it could rely on the court's judgment. Allowing new actions to be commenced under the accidental failure of suit statute in such a case would undermine the finality so clearly mandated by § 52-549z. See *Coldwell Banker Manning Realty, Inc.* v. *Cushman & Wakefield of Connecticut, Inc.*, 293 Conn. 582, 594, 980 A.2d 819 (2009) ("[t]he principal characteristic of an arbitration award is its finality as to the matters submitted so that the rights and obligations of the parties may be definitely fixed" (internal quotation marks omitted)); cf. *Carbone* v. *Zon-*

*ing Board of Appeals*, 126 Conn. 602, 607, 13 A.2d 462 (1940) ("Statutes and special laws such as the one before us fixing a rather brief time in which appeals may be taken to the courts from the orders and decisions of administrative boards are evidently designed to secure in the public interest a speedy determination of the issues involved; and to make it possible to proceed in the matter as soon as the time to take an appeal has passed if one has not been filed. To hold that an appeal in such a proceeding as the one before us is an 'action' within the meaning of [the accidental failure of suit statute], would have the practical effect of eliminating the time factor in taking such appeals."); *Bank Building & Equipment Corp. of America* v. *Architectural Examining Board*, 153 Conn. 121, 124–25, 214 A.2d 377 (1965) (citing *Carbone* and concluding that "[t]he obvious legislative purpose of securing a prompt determination of the issues in an appeal from the orders of the defendant board . . . could be nullified . . . by a resort to . . . § 52-592"); *Metcalfe* v. *Sandford*, 271 Conn. 531, 537, 858 A.2d 757 (2004) ("The reasoning adopted by this court in *Carbone* and endorsed in *Bank Building & Equipment Corp.*, applies with equal force to appeals from probate. As with appeals from administrative agencies, the legislature has provided for prompt resolution of issues and finality in decisions by establishing a relatively short time limit within which an appeal from probate may be taken. . . . This time limit provides for the prompt settlement and administration of estates by giving interested parties confidence in the status of the estate within a reasonable time period." (Citation omitted; footnote omitted.)).

Furthermore, if the meaning of the phrase "tried on its merits" is limited to cases in which there has been a formal "trial," an action resolved on the merits prior to a court or jury trial, for example, by way of summary judgment, could well be open to relitigation through § 52-592 (a). A more expansive reading of the phrase that incorporates other forms of summary adjudication that turn on the merits of the particular claims presented produces a result more harmonious with existing case law. See *Boone* v. *William W. Backus Hospital*, 102 Conn. App. 305, 315, 925 A.2d 432 (accidental failure of suit statute was inapplicable because merits of plaintiff's claims had already been decided "through the [trial] court's rendering of summary judgment"), cert. denied, 284 Conn. 906, 931 A.2d 261 (2007); see also *Hughes* v. *Bemer*, 206 Conn. 491, 492–93, 538 A.2d 703 (1988) (trial court's judgment in favor of defendant resulting from plaintiff's failure to plead over following grant of motion to strike was considered on merits for purposes of § 52-592); *Carr* v. *Century 21 Real Estate*, Superior Court, judicial district of Fairfield, Docket No. CV-31-84-16 (March 31, 1995) ("[T]he [accidental failure of suit] statute cannot be used when there has been a valid judgment on the merits after [a] full and fair hear-

ing. . . . [The trial court rendered] summary judgment in favor of [the defendant] in the original action. Such a judgment constitutes a judgment on the merits." (Citations omitted.)); cf. *Holt* v. *KMI-Continental, Inc.*, 95 F.3d 123, 131 (2d Cir. 1996) (Connecticut's accidental failure of suit statute "only applies if the original claim was dismissed for procedural reasons and not on the merits"), cert. denied, 520 U.S. 1228, 117 S. Ct. 1819, 137 L. Ed. 2d 1027 (1997).

The plaintiff's reliance on the remedial nature of § 52-592 is also unavailing. It is well established that the purpose of § 52-592 (a) is "to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his [or her] day in court. . . . The design of the rules of practice is both to facilitate business and to advance justice; they will be interpreted liberally in any case [in which] it shall be manifest that a strict adherence to them will work surprise or injustice. . . . Our practice does not favor the termination of proceedings without a determination of the merits of the controversy where that can be brought about with due regard to necessary rules of procedure." (Internal quotation marks omitted.) *Rocco* v. *Garrison*, 268 Conn. 541, 558, 848 A.2d 352 (2004). As we discussed previously in this opinion, the nature of the arbitration proceeding itself and the statutory requirement that "[a] decision of the arbitrator *shall become a judgment of the court* if no appeal from the arbitrator's decision by way of a demand for a trial de novo is filed" all indicate that the present case has, in fact, been considered on its merits. General Statutes § 52-549z (a). The arbitrator made a finding based on the evidence presented by the parties and clearly articulated the reasons for his findings. The trial court then adopted that decision as its own. Requiring adherence to the judgment that followed works neither a surprise nor an injustice on the plaintiff. As such, the policy considerations behind § 52-592 (a) do not bolster the plaintiff's position.[8]

Finally, because we find its facts distinguishable from the present case, we respectfully disagree with Justice Eveleigh's conclusion that the issue presented in this appeal is controlled by *Nunno* v. *Wixner*, supra, 257 Conn. 671. In *Nunno*, this court considered whether the offer of compromise statute, General Statutes § 52-192a, applies to a judgment rendered after a mandatory arbitration proceeding pursuant to § 52-549u. Id., 673–74. Section 52-192a indicates that offer of compromise interest is only available "[a]fter trial," and, accordingly, this court was called on to consider whether a mandatory arbitration pursuant to § 52-549u constituted a "trial" for that limited purpose. *Nunno* v. *Wixner*, supra, 676–77. Although we concluded that arbitration pursuant to § 52-549u is not a "trial" for purposes of the offer of compromise statute; id., 677; for the reasons that follow, we do not believe that our holding in that case requires us to apply the same narrow reading of the term

"trial" in § 52-192a to the phrase "tried on its merits" in § 52-592 (a).

First, the statute at issue in *Nunno*, the offer of compromise statute, is textually distinguishable from the accidental failure of suit statute. The phrase "[a]fter trial" in § 52-192a is different from the phrase "tried on its merits" in § 52-592 (a). Although the word "trial" is most often understood as a formal trial before a judicial body, the word "tried" has frequently been used in reference to alternative dispute resolutions outside of a formal trial, including arbitration proceedings. See, e.g., *Demsey & Associates, Inc.* v. *S. S. Sea Star*, 461 F.2d 1009, 1017 (2d Cir. 1972) ("[third-party defendant claimed it] was entitled to have certain issues *tried by arbitration*" (emphasis added)); *Bean* v. *Farnam*, 23 Mass. (6 Pick.) 268, 275 (1828) ("[t]he plea . . . in the present case does not require us to try over again a matter already *tried by the arbitrators*" (emphasis added)); cf. *Paulus* v. *LaSala*, 56 Conn. App. 139, 140, 742 A.2d 379 (1999) ("[a]n attorney trial referee *tried* the case" (emphasis added)), cert. denied, 252 Conn. 928, 746 A.2d 789 (2000); *Spearhead Construction Corp.* v. *Bianco*, 39 Conn. App. 122, 127, 665 A.2d 86 ("[t]his case was *tried* before an attorney trial referee" (emphasis added)), cert. denied, 253 Conn. 928, 667 A.2d 554 (1995).

In addition, the phrase "[a]fter trial" in § 52-192a and the phrase "tried on its merits" in § 52-592 (a) can also be distinguished by the other language used in those statutes. Section 52-192a contains several references to "a verdict by the jury or an award by the court" that will be considered "[a]fter trial . . . ." These references make it plain that the legislature intended for the term "trial" in § 52-192a to refer to a formal trial held before a judge. The relevant portions of § 52-592 (a), on the other hand, neither mention jury verdicts or court awards nor contain any other language that would indicate the legislature's intention to restrict the phrase "tried on its merits" to proceedings conducted exclusively before a judge. Rather, the statute contemplates a remedy for actions that have failed to be heard *on their merits*. There can be no dispute that the arbitrator's decision, which was later adopted by the trial court itself, resolved the present case on its merits. Indeed, the plaintiff does not contend otherwise.

Unlike in *Nunno*,[9] a reading of the phrase "tried on [the] merits" as requiring less than a formal trial is not inconsistent with the underlying purpose of § 52-592 (a). The purpose of § 52-592 (a) is "to avoid hardships arising from an unbending enforcement of limitation statutes"; *Issac* v. *Mount Sinai Hospital*, 210 Conn. 721, 728, 557 A.2d 116 (1989); and "to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his day in court." (Internal quotation marks omitted.) *Rocco* v. *Garrison*, supra,

268 Conn. 558. In other words, rather than trying to conserve judicial resources, the accidental failure of suit statute ensures that, under certain circumstances, litigants retain their right to have their disputes resolved on the merits. The right to have disputes resolved on the merits is not exclusive to a formal court or jury trial. For the reasons discussed previously, it is clear that the parties in the present case have had an opportunity to have their dispute resolved on the merits.

For the foregoing reasons, we conclude that the plaintiff's first case was "tried on its merits" within the meaning of § 52-592 (a) and that, as a result, the Appellate Court properly remanded the present case to the trial court with direction to render judgment in favor of the defendant.

The judgment of the Appellate Court is affirmed.

In this opinion D'AURIA, MULLINS and KELLER, Js. concurred.

* November 15, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] General Statutes (Rev. to 2017) § 52-549z provides in relevant part: "(a) A decision of the arbitrator shall become a judgment of the court if no appeal from the arbitrator's decision by way of a demand for a trial de novo is filed in accordance with subsection (d) of this section.

"(b) A decision of the arbitrator shall become null and void if an appeal from the arbitrator's decision by way of a demand for a trial de novo is filed in accordance with subsection (d) of this section.

* * *

"(d) *An appeal by way of a demand for a trial de novo must be filed with the court clerk within twenty days* after the deposit of the arbitrator's decision in the United States mail, as evidenced by the postmark, and it shall include a certification that a copy thereof has been served on each counsel of record, to be accomplished in accordance with the rules of court. The decision of the arbitrator shall not be admissible in any proceeding resulting after a claim for a trial de novo or from a setting aside of an award in accordance with section 52-549aa. . . ." (Emphasis added.)

We note that, after the events underlying the present appeal, the legislature amended § 52-549z (d) to allow a demand for a trial de novo following the receipt of an electronic notice. See Public Acts 2019, No. 19-64, § 23. All references to § 52-549z in this opinion are to the 2017 revision of the General Statutes.

[2] General Statutes § 52-549u provides in relevant part: "[T]he judges of the Superior Court may make such rules as they deem necessary to provide a procedure in accordance with which the court, in its discretion, may refer to an arbitrator, for proceedings authorized pursuant to this chapter, any civil action in which in the discretion of the court, the reasonable expectation of a judgment is less than fifty thousand dollars exclusive of legal interest and costs and in which a claim for a trial by jury and a certificate of closed pleadings have been filed. An award under this section shall not exceed fifty thousand dollars, exclusive of legal interest and costs. . . ."

[3] The facts relating to the events following the arbitrator's decision in the prior action are taken from the allegations contained in the complaint in the present case. The defendant does not appear to contest the accuracy of these allegations.

[4] General Statutes § 52-592 (a) provides in relevant part: "If any action, commenced within the time limited by law, has failed one or more times to be *tried on its merits* because of insufficient service or return of the writ due to unavoidable accident or the default or neglect of the officer to whom it was committed, or because the action has been dismissed for want of jurisdiction, or the action has been otherwise avoided or defeated by the death of a party or for any matter of form; or if, in any such action after a verdict for the plaintiff, the judgment has been set aside, or if a judgment of nonsuit has been rendered or a judgment for the plaintiff reversed, the plaintiff . . . may commence a new action . . . for the same cause at any

time within one year after the determination of the original action or after the reversal of the judgment." (Emphasis added.)

[5] We note that the Appellate Court's analysis of res judicata is not at issue in this certified appeal. See footnote 6 of this opinion.

[6] This court granted the plaintiff's petition for certification to appeal, limited to the following issues: (1) "Did the Appellate Court correctly conclude that a judgment rendered after mandatory arbitration pursuant to . . . § 52-549u is a 'trial on the merits' that bars a plaintiff from subsequently utilizing . . . § 52-592?" And (2) "[w]as the plaintiff's failure to request a trial de novo pursuant to . . . § 52-549z, following entry of the arbitrator's decision under § 52-549u, a 'matter of form,' as contemplated by § 52-592?" *Larmel* v. *Metro North Commuter Railroad Co.*, 335 Conn. 972, 240 A.3d 676 (2020). Because we answer the first question in the affirmative, we need not address the second.

[7] In reaching this conclusion, we emphasize that the existence of a judgment itself is not determinative of whether the accidental failure of suit statute applies. The question of whether a particular case has been "tried on its merits" within the meaning of § 52-592 (a), rather, turns on the *basis* of the judgment ultimately rendered. When, as in this case, the judgment rendered was based on an assessment of the underlying merits of the claims, the accidental failure of suit statute will not operate to revive those claims. See, e.g., *Hughes* v. *Bemer*, 206 Conn. 491, 492–93, 538 A.2d 703 (1988) (accidental failure of suit statute did not apply to claims that were disposed on merits pursuant to grant of motion to strike).

[8] We note that reaching the opposite conclusion would mean that a plaintiff who inadvertently misses the deadline for requesting a trial de novo could have recourse under the accidental failure of suit statute, whereas a similarly situated defendant would not. This would mean that the deadline created by § 52-549z, which nominally applies to both parties, would be fatal only to defendants. It is difficult to believe that such an inequitable result would have been intended by our legislature.

[9] One of the arguments that informed our construction of the phrase "[a]fter trial" in *Nunno* was that the imposition of interest on a defendant would discourage the voluntary acceptance of arbitration awards. (Internal quotation marks omitted.) *Nunno* v. *Wixner*, supra, 257 Conn. 677, 684–85. That same tension is not at issue in the present case.

———————————————